UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN SAPORITO and PHYLLIS SAPORITO,

                        Plaintiffs,                    **MEMORANDUM AND ORDER**
                                                                                      CV 07-3985 (WDW)

        -against-

KENNETH E. SMITH and DEPARTMENT OF
THE NAVY OF THE UNITED STATES OF
AMERICA,

                        Defendants.
----------------------------------------------------------------X
**APPEARANCES:**

**THOMAS P. RAM, ESQ.**
**THE GUCCIARDO LAW FIRM**
Attorneys for Plaintiffs
99 Wall Street, 19th Floor
New York, New York 10005-4301

**LORETTA E. LYNCH, UNITED STATES ATTORNEY**
**By DIANE LEONARDO BECKMANN, ESQ.**
**EASTERN DISTRICT OF NEW YORK**
Attorneys for Defendants
610 Federal Plaza
New York, New York 11722

**WALL, Magistrate Judge:**

       This action was brought under the Federal Tort Claims Act, 28, U.S.C. §1346(b), to recover damages for personal injuries suffered by plaintiff John Saporito ("Saporito") when he fell from his motorcycle while trying to avoid a collision with a car driven by defendant Kenneth E. Smith on October 6, 2005. At the time of the accident, Smith was acting within the scope of his employment with the defendant United States Department of the Navy.

       As a threshold matter, I note that although Smith was named as a defendant in this case, there is no indication in the docket that he was actually served with the complaint, nor is there an

answer or notice of appearance filed on his behalf. Moreover, plaintiffs have not moved for entry of a default judgment against Smith, he is not listed as a defendant on the joint proposed pretrial order submitted by the parties, and in that document, Smith is identified by plaintiffs not as an individual defendant, but rather as an employee of the government working within the scope of his employment at the time of the accident. Accordingly, I deem that plaintiffs have abandoned any claims they may have asserted in the complaint against Smith and dismiss the complaint against him.

The liability phase of the trial was heard by the court on April 29, 2010. At trial, plaintiffs presented the testimony of Smith, Police Officer Lisa Burton, Saporito, Joseph Terrizzi, and William Petersen. Defendants offered no additional testimony. Based on the evidence presented, as well as the post-trial materials submitted by the parties, the court makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. To the extent that any of the findings of fact may be deemed a legal conclusion, it shall be deemed a conclusion of law, and vice versa.

## I. FINDINGS OF FACT[1]

The motor vehicle accident at issue occurred in the morning of October 6, 2005 at the intersection of Route 454 ("454"), also known as Veterans Highway, and Old Willets Path.[2] Trial Transcript ("Tr.") at 3. Suffolk County Police Officer Lisa Burton testified that there is a

---

[1]According to the joint pretrial order submitted by the parties, ("PTO") DE [11], the parties have not stipulated to any facts. Thus, all the findings of fact are derived from the trial testimony and exhibits.

[2]Although neither party elicited testimony regarding the town in which the accident took place, I take judicial notice that this intersection is located in Hauppauge in Suffolk County, New York.

police precinct located approximately 500 feet from the accident location. *Id.* The precinct is located on the north side of 454 at the northeast corner of 454 and Old Willets Path.

At the intersection with Old Willets Path, westbound 454 comprises six lanes – a left turn lane, four through lanes, and a right turn lane. Tr. 4. For purpose of clarity of testimony during the trial, the lanes were sometimes referred to by numbers, with Lane 1 being the left turn lane and proceeding to Lane 6, the right turn lane. The lanes implicated in this accident are the left hand turn lane (Lane 1), the leftmost through lane (Lane 2), and the adjacent through lane (Lane 3). As will be seen *infra,* the witnesses's testimony varies regarding which of these lanes was in use at the time of the accident.

At the time of the accident, defendant Smith was employed as a marine recruiter on Long Island. Tr. at 15. He testified that on the date of the accident, he was driving a government-owned vehicle en route to the police precinct to pull records on government business. Tr. at 15-16. He had never been to the police precinct before. Tr. at 16. The car was a silver Malibu. Tr. 30.

According to Smith, he entered the left hand turn lane of 454 at the Old Willets Path intersection while the signal was red. Tr. 33. While waiting at the light in the left turn lane, Smith surveyed the area and realized he could see the police precinct to his right and behind him. Tr. 18-19, 32. Upon this realization, he decided to make a U-turn and go back around. Tr. 19, 33. When Smith turned back to the traffic signal, it had turned green. Tr. 20. There was a vehicle[3] ahead of Smith in the left turn lane that did not move on the green light. Tr. 20. Smith

---

[3]Smith described this vehicle as a red pickup truck, but could not recall if it had anything attached to it. Tr. 33. Terrizzi testified that the truck was pulling a flatbed trailer. Tr. 47.

believed the driver may have been on a cell phone. Tr. 20. Smith waited a few seconds, honked his horn, but the vehicle ahead did not move. Tr. 21. He honked his horn again, and the vehicle again did not move. Tr. 21.

At this point, Smith looked over his shoulder to see if there was any traffic in the lane next to him. Tr. 22. He testified that he looked in his rearview mirror, his sideview mirror, and over his right shoulder, but saw no vehicles at all approaching in any of the lanes on 454. Tr. 22-23. Smith testified that he turned on his turn signal, moved out of the left turn lane into the adjacent lane to his right and proceeded westbound. Tr. 23, 35. He intended to go around him and make a U-turn further ahead about 100 yards. Tr. 34-36. He estimated that he was traveling at about 10 or 15 miles per hour when he changed lanes. Tr. 35.

As he passed the vehicle that had been stopped ahead of him in the left turn lane, Smith looked at that driver in his sideview mirror, but testified that he was not distracted. Tr. 24. Smith admitted that he looked at the driver of the stopped vehicle because he "wanted to see what his problem was." Tr. 24. He estimated that he was approximately 10-15 feet in front of the pickup truck when he looked in his sideview mirror to look back at that vehicle's driver, who was talking on a cell phone. Tr. 36.

Smith testified that when he looks at his mirrors, "I just roll over" and look in the other mirrors. Tr. 37. As he looked away from the sideview mirror and into his rearview mirror, he saw Saporito on his motorcycle "leaning over, starting to fall." Tr. 37. Smith did not see him fall off and could not tell what lane he had been traveling in. Tr. 24-25. Smith testified that he did not cut off the motorcycle, Tr. 30, but after proceeding through the intersection, he parked his car and went back to see if Saporito was okay, Tr. 25. Smith testified that Saporito was on the

ground next to the vehicle that was still in the left turn lane. Tr. 25-26. By marking plaintiff's exhibit 1 with a "JS", Smith indicated that Saporito came to rest in the middle of Lane 2, or the leftmost through traffic lane. Tr. 27-28.

Saporito, Joseph Terrizzi, and William Petersen were riding their motorcycles to Long Beach for lunch on October 6, 2005. Tr. 41-42. According to Petersen, the three rode together about once a week. Tr. 56. As they approached Old Willets Path, they were traveling in staggered formation with Saporito in front, Petersen next behind and to the right, and Terrizzi last, directly behind Saporito. Tr. 42. Terrizzi testified that there were approximately 50 feet between him and Saporito, and that they were traveling at approximately 40 miles per hour. Tr. 42. Petersen estimated the distance between each motorcyclist to be approximately 40 feet. Tr. 64. Petersen and Saporito estimated their speed to be 40 or 45 miles per hour. Tr. 57, 70.

Terrizzi testified that there were some cars lined up to their left, and as Saporito was going by, a silver car "shot out right in front of" Saporito and he locked up his wheels and went "flying through the air." Tr. 42-43. Terrizzi placed the cars lined up – the pickup truck and Smith's silver car – in Lane 2, the leftmost through lane. Tr. 50. Terrizzi stopped and parked his bike, then went back to Saporito, who was laying on the ground. Tr. 43. By marking plaintiff's exhibit 1 with an "X", Terrizzi indicated that the three motorcycles were traveling in Lane 3, and by marking it with an "O", indicated that the silver car came from Lane 2 just before the accident. Tr. 44; Pls' Ex. 1. Terrizzi saw the silver car leave Lane 2 and enter Lane 3 and cut off Saporito. Tr. 46-47. He stated that he was "completely sure" that the silver car came from Lane 2 into Lane 3.

Petersen also testified that the three motorcyclists were traveling in staggered formation

5

in Lane 3 and that Saporito was in front and toward the left side of the lane. Tr. 56-57. He testified that there was traffic in Lane 2, and as the motorcyclists approached the intersection, a gray car pulled directly in front of them. Tr. 57-58. He saw Saporito brake abruptly and begin to sway, but didn't see him fall as he had to move into the fourth lane to avoid the gray car himself. Tr. 58.

Saporito also testified that he was in Lane 3 before the accident happened. Tr. 71. He said that although they normally travel in the right-hand lane, they were in Lane 3 because that lane would become the right hand lane of the Northern State Parkway when the road forked ahead. Tr. 86. He testified that a gray-silver car "jutted out in front" of him, he tried to swerve, but the bike went out of control. Tr. 72. He could not identify the lane from which the car came, but assumes from the angle that it came from his left. Tr. 74. Saporito's motorcycle never came into contact with Smith's car. Tr. 30-31, 45. Saporito, who was 56 years old at the time of the accident, also testified that he had been riding motorcycles since he was about 17, and that in the ten years prior to the accident, he rode "[a] couple times a week." Tr. 69, 85.

The motorcyclists had a green light. Tr. 49. The roadway was flat and clear. Tr. 61. Smith testified that weather was not a factor in the accident. Tr. at 16. Saporito, Terrizzi, and Peterson all testified that they were traveling in a staggered formation at about 40 to 45 m.p.h. Defendants have presented no evidence to suggest that Saporito and his companions were operating their motorcycles at an excessive rate of speed or recklessly, or that they were inexperienced motorcyclists. Smith could not testify about Saporito's operation of the motorcycle because he testified that he never saw plaintiff until he was actually falling off the bike. Although Smith testified that he looked over his right shoulder two times, he did not see

6

Saporito or indeed *any* vehicles on the roadway coming up from behind him.  Although there was apparently a police report and Terrizzi filled out a written statement (Tr. 46), none of those documents were entered into evidence at the trial.  Neither party presented any expert testimony or any attempt to reconstruct the accident.

In light of the fact that Smith did not see Saporito or the other motorcyclists until Saporito was already beginning to fall, there are relatively few factual disputes to be determined.  The sole areas of dispute are the manner in which Smith pulled out from behind the stopped vehicle and the lanes in which the various vehicles were idling or traveling.  Defendant Smith testified that he was in the left hand turn lane (Lane 1) and pulled into the adjacent lane (Lane 2).  Plaintiff and his two companions testified that Smith started in the leftmost through lane of traffic (Lane 2) and moved into the adjacent lane (Lane 3), and that they were traveling in staggered formation in Lane 3.

As Smith did not see them, I credit the motorcyclists' testimony that they were traveling in Lane 3 in staggered formation at approximately 40-45 m.p.h.  Given all the testimony, three possible scenarios for this accident emerge:

> 1) Smith was idling in Lane 1 and pulled reasonably and safely into Lane 2.  Saporito, in Lane 3, panicked and lost control of his motorcycle.  This seems to be the interpretation urged by defendant.
>
> 2)  Smith was idling in Lane 1, pulled towards Lane 2 negligently and with undue speed, and moved into Lane 3 to the extent that Saporito had to take evasive action to avoid Smith.
>
> 3) Smith was idling in Lane 2 and pulled directly in front of Saporito in Lane 3.  This is the version urged by plaintiff.

As I find all the witnesses to be credible, yet providing incompatible versions of some facts, it falls to the court to determine the most plausible explanation proven by the evidence

presented. Based on my review of the evidence, I reject the first scenario and find that the second scenario is the most plausible. Although I find Smith's testimony to be generally credible, I find that he likely overstated his level of composure in the situation described. He did not know precisely where he was going, he was further aggravated by the failure of the vehicle ahead of him to move forward on the green light, and he pointedly looked back at that driver immediately upon passing him to see what he was doing. Smith's testimony that he was not distracted at that moment is implausible. I find it far more plausible that his aggravation with the driver of the stopped vehicle resulted in, at best, cursory glances to ascertain whether he could safely change lanes, and that when he did change lanes, he moved out from behind that vehicle at a speed and in a manner that affected Saporito in the operation of his motorcycle. In addition, Smith testified that when he finally noticed Saporito, he saw him in his rearview mirror. This testimony, taken with the testimony of Saporito and the other motorcyclists, further supports a finding that Saporito was behind Smith as he fell, not a lane over. Thus, irrespective of whether Smith started in Lane 1 or Lane 2, his actions took his vehicle, in whole or in part, into Lane 3.

### III. CONCLUSIONS OF LAW

New York law applies in this action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346, 2871-80. *See* 28 U.S.C. §1346 (b). To prevail on a negligence cause of action under New York law, plaintiff must establish three elements by a preponderance of the evidence – "that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank,* 111 F.3d 251, 259 (2d Cir. 1997).

Smith clearly owed a duty to Saporito as "[a] motorist owes a duty of care to other

motorists while driving." *Riccio v. United States,* 2007 WL 1577827, at *5 (E.D.N.Y. May 29, 2007). Under New York law, drivers have a duty to operate their vehicles with reasonable care, to keep a lookout under the circumstances to see and be aware of what was in their view, and to use reasonable care to avoid an accident. *See* New York Pattern Jury Instructions, 2:77; *see also Goldstein v. United States,* 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998) (citations omitted).

It is the law of New York that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.Y. Vehicle & Traffic Law ("V.T.L.") §1128(a). Smith had an obligation, imposed by statute, not to change lanes until he had ascertained that he could do so safely. In addition, it is well established under New York law that a driver has a duty to "see that which through proper use of his senses he should have seen." *Baker v. Nassau Cnty. Police Activity League, Inc.,* 265 A.D.2d 515, 516, 696 N.Y.S.2d 240, 241 (2d Dep't 1999) (citing *Weigand v. United Traction Co.,* 221 N.Y. 39, 42 (1917)) (additional citations omitted).

I find that Smith breached his duty of care to Saporito by failing to ascertain that it was safe to change lanes. *See generally Vainer v. DiSalvo,* 79 A.D.3d 1023, 1024, 914 N.Y.S.2d 236, 237 (2d Dep't 2010) (noting that "[a] violation of the Vehicle and Traffic Law constitutes negligence as a matter of law"). Indeed, the factual dispute concerning Smith's lane of origin is ultimately irrelevant to the question of whether he violated V.T.L. §1128(a). *See, e.g., Jacino v. Sugerman,* 10 A.D.3d 593, 595, 781 N.Y.S.2d 663, 665 (2d Dep't 2004) (factual dispute regarding presence or absence of a double-parked vehicle which may have impeded view of driver of a car pulling out of a parking space was not relevant to a determination of whether that driver violated V.T.L. §1128(a)). Saporito had the right of way and was entitled to anticipate

9

that Smith would obey the traffic laws regarding safe lane changes. *Id.* In addition, although Smith testified that he looked for traffic approaching from behind, he did not see the motorcyclists. It cannot be disputed, however, that they were, in fact, present, and accordingly, Smith failed to see that which he should have seen.

Even assuming Smith was negligent, defendant argues that Smith was not the proximate cause of the accident. It suggests instead that Saporito mistakenly thought that Smith was going to move into his lane, braked, and lost control of the motorcycle. *See* Def's Proposed Findings of Fact, ¶ 32, DE [25]. Given the length and breadth of Saporito's experience riding a motorcycle, I find it implausible that he would have lost control of the motorcycle had Smith merely entered the previously empty lane between them in a measured and reasonable fashion. As discussed *supra,* I find that the most plausible version of the incident is that Smith pulled out from behind the stopped vehicle abruptly and at an excessive speed for the circumstances, and that he crossed, at least in part, in front of Saporito. The actions taken by Smith caused Saporito to take evasive action to avoid a collision, resulting in Saporito's fall from the motorcycle. In other words, I find that Smith's actions were negligent and were a proximate cause of the accident. The remaining issue is whether that conduct was the sole proximate cause.

As there can be more than one proximate cause of an accident, I must determine whether on the evidence presented Saporito failed in his duty and was also a cause of the accident. *See Bonilla v. Calabria,* 80 A.D.3d 720, 915 N.Y.S.2d 615, 616 (2d Dep't 2011) Although Saporito had the right of way, he also had "a duty to keep a proper lookout to avoid colliding with other vehicles." *Id.* (citations omitted). Generally, however, "a driver with the right-of-way who has only seconds to react to a vehicle which has failed to yield is not comparatively negligent for

10

failing to avoid the collision." *Yelder v. Walters,* 64 A.D.3d 762, 764, 883 N.Y.S.2d 290 (2d Dep't 2009); *see also Vainer,* 79 A.D.3d at 1024, 914 N.Y.S.2d at 237 (no comparative negligence where car traveling in same direction on plaintiff's left made sudden right turn in front of plaintiff).

Smith testified that he pulled out from behind the truck, looked into his sideview mirror at that vehicle's driver as he passed him, and then immediately saw Saporito beginning to fall in his rearview mirror. By Smith's own testimony, the time between his lane change and Saporito falling could have only been a matter of seconds. Although Saporito successfully avoided colliding with Smith, he was unable to prevent the fall that resulted in his injuries. In addition, the undisputed evidence is that Saporito was neither behaving recklessly nor traveling at an excessive speed and thus no evidence suggesting plaintiff's actions contributed to the accident. *See, e.g., Flores v. City of New York,* 66 A.D.3d 599, 888 N.Y.S.2d 27 (1st Dep't 2009) (no issue of fact as to comparative negligence on plaintiff's part where "there was no indication that plaintiff was speeding prior to the accident or that he contributed in any way to the accident"). Under the evidence presented, I find that Saporito was not comparatively negligent, and that Smith's negligence was the sole proximate cause of the accident.

**IV.  ORDER**

For all the foregoing reasons, the court finds in favor of the plaintiff John Saporito. Accordingly, the damages phase of the trial must be conducted. The parties shall participate in a telephone conference on **October 20, 2011 at 2:00 p.m.** to schedule further proceedings. Plaintiffs' counsel shall initiate the call and have all parties on the line before connecting with the court at (631) 712-5720. Any request to adjourn this conference must be electronically filed as a

"Motion" and must include proposed alternative dates acceptable to all parties.

Finally, I note that Phyllis Saporito remains a named plaintiff in this matter even though a review of the complaint reveals no apparent claims raised on her behalf.  In addition, defendant has suggested in the joint proposed pretrial order that she failed to file an administrative claim in this matter and that accordingly, this court lacks subject matter jurisdiction over any claim she may have.  Prior to the conference, plaintiffs' counsel is directed to electronically file a letter addressing Phyllis Saporito's role in this action.

Dated:  Central Islip, New York                              **SO ORDERED:**
        September 21, 2011

                                                                /s/William D. Wall
                                                               WILLIAM D. WALL
                                                               United States Magistrate Judge